# UNITED STATES DISTRICT COURT
for the
Southern District of California

In the Matter of the Search of
*(Briefly describe the property to be searched
or identify the person by name and address)*

telcel vb.3 LTE 256 MB sim card
MII 8952020516 H6 212926021F

Case No.

**FILED**
APR 0 3 2018
CLERK, U.S. DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA
BY _____ DEPUTY

**18MJ1551**

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:
Please see Attachment A-4.

located in the ___Southern___ District of ___California___, there is now concealed *(identify the person or describe the property to be seized)*:
Please see Attachment B.

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

☑ evidence of a crime;

☐ contraband, fruits of crime, or other items illegally possessed;

☐ property designed for use, intended for use, or used in committing a crime;

☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 21 U.S.C. 841, and 846 | Possession with Intent to Distribute Methamphetamine, and Conspiracy |
| 21 U.S.C. 952, 960, 963 | Importation of Methamphetamine, and Conspiracy |

The application is based on these facts:
Please see Affidavit of Special Agent John C. Martinez

☐ Continued on the attached sheet.

☐ Delayed notice of _____ days (give exact ending date if more than 30 days: _____) is requested
under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

_____
*Applicant's signature*

John C. Martinez, Special Agent, HSI
*Printed name and title*

Sworn to before me and signed in my presence.

Date: 4/3/18

_____
*Judge's signature*

City and state: San Diego, CA

The Honorable William V. Gallo, U.S. Magistrate Judge
*Printed name and title*

# AFFIDAVIT

I, John C. Martinez, Special Agent (SA), Homeland Security Investigations (HIS), after being duly sworn, state:

## INTRODUCTION

1. I make this affidavit in support of an application for a search warrant for: one (1) Samsung SM-J120AZ UD cellular phone, serial number R58J35S0QAM, IMEI: 356903083218474 (**Cell Phone #1**); one (1) Samsung GT-S3350 cellular phone, serial number R21C75R6NDL, IMEI: 353628/05/021931/1 (**Cell Phone #2**); one (1) telcel vb.4 sim card, MII: 8952020017 H6 312291952F (**Sim Card #1**), one (1) telcel vb.3 LTE 256 MB, MII: 8952020516 H6 212926021F (**Sim Card #2**), one (1) 6.11 sim card, MII: 895_5040620139439F (**Sim Card #3**) [Note that the "_" concerns a portion of the MII covered by a sticker], and one (1) 4G LTE sim card, MII: 8952037000042929712F (**Sim Card #4**), which was seized from Francisco Javier RANGEL-Guizar (RANGEL) on or about December 6, 2017 at the time of his arrest for importing methamphetamine, and currently is in the possession of the Office of the Special Agent in Charge (SAC), Homeland Security Investigations (HSI), at 880 Front Street, Suite 3200, San Diego, CA 92101. **Cell Phone #1** further is described in Attachment A-1 (incorporated herein by reference). **Cell Phone #2** further is described in Attachment A-2 (incorporated herein by reference). **Sim Card #1** further is described in Attachment A-3 (incorporated herein by reference). **Sim Card #2** further is described in Attachment A-4 (incorporated herein by reference). **Sim Card #3** further is described in Attachment A-5 (incorporated herein by reference). **Sim Card #4** further is described in Attachment A-6 (incorporated herein by reference).

2. I seek authority to search **Cell Phone #1**, **Cell Phone #2**, **Sim Card #1**, **Sim Card #2**, **Sim Card #3**, and **Sim Card #4** for evidence from November 1, 2017, which is when RANGEL started to cross the load vehicle according to crossing records and up to and including December 6, 2017, the date of arrest, of crimes, specifically, violations of 21 U.S.C. §§ 841, 846, 952, 960, and 963.

1

3. Because this affidavit is being submitted for the limited purpose of establishing probable cause in support of the application for a search warrant, it does not set forth every fact that others or I have learned during the course of this investigation. I submit this Affidavit to search **Cell Phone #1, Cell Phone #2, Sim Card #1, Sim Card #2, Sim Card #3**, and **Sim Card #4** for and to seize evidence as outlined in Attachment B. Dates, times and amounts are approximate.

## EXPERIENCE AND TRAINING

4. I am a Special Agent employed by the U.S. Department of Homeland Security (DHS), Immigration and Customs Enforcement (ICE), Homeland Security Investigations (HSI). I have been employed as a special agent since 2013. Currently, I am assigned to the Contraband Smuggling Group in Otay Mesa, California. Prior to becoming an HSI Special Agent, I was a United States Border Patrol Agent for 14 years. I am a graduate of the Federal Law Enforcement Training Center (FLETC).

5. I am a Federal Law Enforcement Officer within the meaning of Rule 41(b) of the Federal Rules of Criminal Procedure, that is, a government agent engaged in the enforcement of the criminal laws of the United States, and thereby authorized to request issuance of federal search and seizure warrants. As such, I am empowered to conduct investigations of, and to make arrests for federal offenses. I have been cross-designated by the Drug Enforcement Administration (DEA) to conduct investigations and make arrests based on violations of Title 21 of the United States Code.

6. As a Special Agent with HSI, my primary duties include the investigation of narcotics-related violations of Title 21 of the United States Code. I investigate violations of the United States Code that stem from the International border between Mexico and the United States, including drug trafficking. I have participated in investigating various drug trafficking organizations that are involved in the acquisition, importation, transportation, and distribution of controlled substances into and through the Southern District of California. I have spoken with other agents with extensive experience in narcotics trafficking investigations.

7. I have arrested or participated in the arrest of numerous persons for violations of the Controlled Substances Act. In these cases, I have conducted interviews with the arrested persons and their associates, as well as cooperating individuals and informants. I have conducted surveillance of narcotics traffickers as they conduct their trafficking activity while crossing the border from Mexico into the United States, and while operating inside the United States. I have executed search warrants on cellular phones used by narcotics traffickers in furtherance of their trafficking activities. Through these investigative activities, I have gained a working knowledge and insight into the typical activity of narcotics traffickers, and the structure of their narcotics trafficking networks. I also have gained information as to the normal operational habits of persons who make their living as narcotics traffickers.

8. Through the course of my training, investigations, and conversations with other law enforcement personnel, I am aware that it is a common practice for drug smugglers to work in concert with other individuals and to do so by utilizing cellular telephones, pagers and portable radios to maintain communications with co-conspirators in order to further their criminal activities. I have also witnessed such practices while working in an undercover capacity during the course of several investigations. Conspiracies involved in the smuggling and trafficking of drugs generate many types of evidence including, but not limited to, cellular phone-related evidence such as voicemail messages referring to the arrangements of travel and payment, names, photographs, text messaging (via SMS or other applications), and phone numbers of co-conspirators. For example, load drivers smuggling controlled substances across the border are typically in telephonic contact with co-conspirators immediately prior to and following the crossing of the load vehicle, at which time they receive instructions on how to cross and where and when to deliver the controlled substance.

9. In preparing this affidavit, I have conferred with other agents and law enforcement personnel who are experienced in the area of narcotics investigations, and

the opinions stated below are shared by them. Further, I have personal knowledge of the following facts, or have had them related to me by persons mentioned in this affidavit. This statement is made in support of an application for a warrant to search **Cell Phone #1, Cell Phone #2, Sim Card #1, Sim Card #2, Sim Card #3,** and **Sim Card #4** that are believed to contain evidence of violations of Title 21, United States Code, Sections 952, 960, and 963.

10. Based upon my training and experience and consultations with law enforcement officers experienced in narcotics smuggling investigations, and all the facts and opinions set forth in this affidavit, I submit the following:

   a. Drug smugglers and traffickers will use cellular/mobile telephones because they are mobile and they have instant access to telephone calls, text, web, and voice messages.

   b. Drug smugglers and traffickers will use cellular/mobile telephones because they are able to actively monitor the progress of their illegal cargo while the conveyance is in transit.

   c. Drug smugglers, drug traffickers, and their accomplices will use cellular/mobile telephones because they easily may arrange and/or determine what time their illegal cargo will arrive at predetermined locations.

   d. Drug smugglers and traffickers will use cellular/mobile telephones to direct drivers to synchronize an exact drop off and/or pick up time of their illegal cargo.

   e. Drug smugglers and traffickers will use cellular/mobile telephones to notify or warn their accomplices of law enforcement activity to include the presence and posture of marked and unmarked units, as well as the operational status of checkpoints and border crossings.

   f. Drug smugglers, drug traffickers, and their co-conspirators often use cellular/mobile telephones to communicate with load drivers who transport their narcotics and/or drug proceeds.

4

g.  "SIM" (subscriber identify module or subscriber identification module) or memory cards store identification and contact information of subscribers. They may be transferrable between different cellular/mobile telephones. Drug smugglers, drug traffickers, and their co-conspirators will replace the SIM (memory) cards in their cellular or mobile phones as a means to avoid detection.

11.  Based upon my training and experience, consultations with law enforcement officers experienced in narcotics smuggling investigations, and all the facts and opinions set forth in this affidavit, I know that cellular/mobile telephones and SIM cards can and often do contain electronic records, phone logs and contacts, voice and text communications, and data such as emails, text messages, chats and chat logs from various third-party applications, photographs, audio files, videos, and location data. This information can be stored within disks, memory cards, deleted data, remnant data, slack space, and temporary or permanent files contained on or in the cellular/mobile telephones.

## FACTS SUPPORTING PROBABLE CAUSE

12.  According to a report prepared by Customs and Border Protection (CBP) Officer L. Cruz, Officer L. Cruz was conducting the primary inspection in vehicle lane 13 at the San Ysidro, California port of entry on December 6, 2017. At approximately 3:01 p.m., RANGEL applied for entry into the United States from Mexico. RANGEL was the driver and sole occupant of a silver Ford Explorer Trac bearing Mexican license plate ZJB194L. On encountering RANGEL, Officer Cruz received two negative customs declarations from him. Officer Cruz received a computer-generated alert based on the crossing history of the truck. Officer Cruz then referred RANGEL to the secondary area for further inspection.

13.  According to a report prepared by CBP Officer P. Zuniga, Officer Zuniga was operating the Z-portal. When RANGEL and the truck drove through the Z-portal,

5

the Officer Zuniga noticed anomalies in the truck bed area. Officer Zuniga then provided the images to CBP Officer De Leon Perez.

14. According to a report prepared by Canine Enforcement Officer I. Lee, Officer Lee and her narcotic detector dog Mary scanned the truck. Mary alerted to the bed area of the truck.

15. According to a report prepared by CBP Officer R. De Leon Perez, Officer Perez conducted a seven-point inspection of the truck. He removed all the screws from the bed. He then removed the spare tire from the bottom of the truck. He called in a mechanic to finish removing the top of the bed. He placed the truck on a hydraulic lift to try and identify anything out of the ordinary. He proceeded to drill a hole through the bottom of the bed of the truck with a flat head screw driver. He then poked into the newly drilled hole and recovered a white crystalized substance. The substance tested positive for methamphetamine.

16. At around 6:45 p.m., the mechanic responded. Officer De Leon Perez learned from the mechanic that the access point to the bed compartment was on the passenger side by the back wheel. The mechanic made a hole on the side of that compartment. Officer De Leon Perez learned that there were more packages there. Officer De Leon Perez ended up removing 18 packages from the truck. The total amount was 25.06 kilograms or 55.13 pounds of methamphetamine. Officer De Leon also seized **Cell Phone #1, Cell Phone #2, Sim Card #1, Sim Card #2, Sim Card #3,** and **Sim Card #4** along with other items located in the truck. One of these items was a Mexican vehicle registration card showing that the truck with Mexican license plate ZJB194L was registered to RANGEL as of October 11, 2017. RANGEL was arrested and charged with importation of methamphetamine, in violation of 21 U.S.C. §§ 952, and 960.

17. According to crossing records I accessed from the Treasury Enforcement Communications System (TECS), the truck (per the Mexican license plate ZJB194L) began crossing on or about November 10, 2017 and had approximately six prior

6

crossing before the December 6, 2017 crossing. According to crossing records, RANGEL appeared to be the driver of the truck during those prior crossings.

18. Based on my training, experience, the location of the drugs, and the manner of concealment, I believe the packages consisted of drugs intended for importation and distribution. Based upon my experience and investigation in this case, I believe that RANGEL, as well as other persons yet unknown, were involved in an on-going conspiracy to import and distribute methamphetamine into various parts of the United States. Based on my experience investigating narcotics smugglers, I also believe that RANGEL may have used **Cell Phone #1, Cell Phone #2, Sim Card #1, Sim Card #2, Sim Card #3**, and **Sim Card #4** to coordinate with co-conspirators regarding the importation and distribution of the methamphetamine, and to further this conspiracy both inside and outside of the United States. I also know that recent calls made and received, telephone numbers, contact names, electronic mail (email) addresses, appointment dates, text messages, pictures and other digital information are stored in the memory of cellular phones and sim cards, which may identify other persons involved in drug trafficking activities.

19. Based upon my experience and training, consultation with other law enforcement officers experienced in narcotics trafficking investigations, and all the facts and opinions set forth in this affidavit, I believe that information relevant to the narcotics smuggling activities of RANGEL and his co-conspirators, such as telephone numbers, made and received calls, contact names, electronic mail (email) addresses, appointment dates, messages, pictures and other digital information are stored in the memory of the cellular telephones and sim cards described herein. Moreover, this warrant seeks data from **Cell Phone #1, Cell Phone #2, Sim Card #1, Sim Card #2, Sim Card #3**, and **Sim Card #4** for the period of November 10, 2017, the first time in 2017 when RANGEL crossed in the load vehicle, through December 6, 2017, the date of RANGEL's arrest.

7

## **METHODOLOGY**

20. It is not possible to determine, merely by knowing the cellular/mobile telephone's make, model and serial number, the nature and types of services to which the device is subscribed and the nature of the data stored on the device. Cellular/mobile devices today can be simple cellular telephones and text message devices, can include cameras, can serve as personal digital assistants and have functions such as calendars and full address books and can be mini-computers allowing for electronic mail services, web services and rudimentary word processing. An increasing number of cellular/mobile service providers now allow for their subscribers to access their device over the internet and remotely destroy all of the data contained on the device. For that reason, the device may only be powered in a secure environment or, if possible, started in "flight mode" which disables access to the network. Unlike typical computers, many cellular/mobile telephones do not have hard drives or hard drive equivalents and store information in volatile memory within the device or in memory cards inserted into the device. Current technology provides some solutions for acquiring some of the data stored in some cellular/mobile telephone models using forensic hardware and software. Even if some of the stored information on the device may be acquired forensically, not all of the data subject to seizure may be so acquired. For devices that are not subject to forensic data acquisition or that have potentially relevant data stored that is not subject to such acquisition, the examiner must inspect the device manually and record the process and the results using digital photography. This process is time and labor intensive and may take weeks or longer.

21. Following the issuance of this warrant, I will collect **Cell Phone #1, Cell Phone #2, Sim Card #1, Sim Card #2, Sim Card #3**, and **Sim Card #4** and subject them to analysis. All forensic analysis of the data contained within the telephones and the memory cards will employ search protocols directed exclusively to the identification and extraction of data within the scope of this warrant.

22. Based on the foregoing, identifying and extracting data subject to seizure pursuant to this warrant may require a range of data analysis techniques, including manual review, and, consequently, may take weeks or months. The personnel conducting the identification and extraction of data will complete the analysis within ninety (90) days, absent further application to this court.

## CONCLUSION

23. Based on all of the facts and circumstances described above, I believe that probable cause exists to conclude RANGEL used **Cell Phone #1**, **Cell Phone #2**, **Sim Card #1**, **Sim Card #2**, **Sim Card #3**, and **Sim Card #4** to facilitate the offense of importing methamphetamine. **Cell Phone #1**, **Cell Phone #2**, **Sim Card #1**, **Sim Card #2**, **Sim Card #3**, and **Sim Card #4** likely were used to facilitate the offense by transmitting and storing data, specifically that described in Attachment B, which constitutes evidence, fruits, and instrumentalities of violations of 21 U.S.C. §§841, 846, 952, 960 and 963. I also believe that probable cause exists to believe that evidence, fruits and instrumentalities of illegal activity committed by RANGEL continues to exist on **Cell Phone #1** as described in Attachment A-1, **Cell Phone #2** as described in Attachment A-2, **Sim Card #1** as described in Attachment A-3, **Sim Card #2** further as described in Attachment A-4, **Sim Card #3** as described in Attachment A-5, and **Sim Card #4** as described in Attachment A-6. Therefore, I respectfully request that the Court issue this warrant.

//
//
//
//
//
//
//
//

9

I swear the foregoing is true and correct to the best of my knowledge and belief.

John C. Martinez
Special Agent
Homeland Security Investigations

Subscribed and sworn to before me this ___3___ day of April, 2018.

_____
The Honorable William V. Gallo
United States Magistrate Judge

## **ATTACHMENT A-4**
PROPERTY TO BE SEARCHED

### Sim Card #2

**telcel vb.3 LTE 256 MB sim card**
MII 8952020516 H6 212926021F

Currently in the possession of Office of the Special Agent in Charge (HSI SAC), Homeland Security Investigations, 880 Front Street, Suite 3200, San Diego, CA 92101.

## **ATTACHMENT B**
ITEMS TO BE SEIZED

Authorization to search **Cell Phone #1** described in Attachment A-1, **Cell Phone #2** described in Attachment A-2, **Sim Card #1** described in Attachment A-3, **Sim Card #2** described in Attachment A-4, **Sim Card #3** described in Attachment A-5 and **Sim Card #4** described in Attachment A-6 includes the search of disks, memory cards, deleted data, remnant data, slack space, and temporary or permanent files contained on or in **Cell Phone #1, Cell Phone #2, Sim Card #1, Sim Card #2, Sim Card #3**, and **Sim Card #4** for evidence described below.  The seizure and search of **Cell Phone #1, Cell Phone #2, Sim Card #1, Sim Card #2, Sim Card #3**, and **Sim Card #4** will be conducted in accordance with the affidavit submitted in support of the warrant.

The evidence to be seized from **Cell Phone #1, Cell Phone #2, Sim Card #1, Sim Card #2, Sim Card #3**, and **Sim Card #4** will be electronic records, communications, and data such as emails, text messages, photographs, audio files, videos, and location data for the period of November 10, 2017 to December 6, 2017.

a. tending to identify attempts to import methamphetamine or some other controlled substance from Mexico into the United States, or distribute methamphetamine or some other controlled substance within the United States;

b. tending to identify accounts, facilities, storage devices, and/or services–such as email addresses, IP addresses, and phone numbers–used to facilitate the importation of methamphetamine or some other controlled substance from Mexico into the United States, or possession with the intent to distribute methamphetamine or some other controlled substance within the United States;

c. tending to identify co-conspirators, criminal associates, or others involved in importation of methamphetamine or some other controlled substance from Mexico into the United States, or possession with the intent to

      distribute methamphetamine or some other controlled substance within the United States;

d. tending to identify travel to or presence at locations involved in the importation of methamphetamine or some other controlled substance from Mexico into the United States, or possession with the intent to distribute methamphetamine or some other controlled substance within the United States, such as stash houses, load houses, or delivery points;

e. tending to identify the user of, or persons with control over or access to, the subject telephone or subject sim card; and/or

f. tending to place in context, identify the creator or recipient of, or establish the time of creation or receipt of communications, records, or data involved in the activities described above;

**which are evidence of violations of Title 21, United States Code, Sections 841, 846, 952, 960, and 963.**